UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH LLOYD,

          Plaintiff,                       CIVIL ACTION NO. 05 CV 74251 DT

        v.                          DISTRICT JUDGE GERALD E. ROSEN

JO ANNE B. BARNHART,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

    This Social Security Disability case comes before the court on the parties' cross-motions

motion for summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be granted and that plaintiff's motion be denied.

**II.  Background**

    Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on

May 2, 2003, claiming that he was disabled due to a back impairment, with a disability onset date

of December 6, 2001.  (Tr. 64, 82-83).  Plaintiff sustained an injury to his back on the alleged

onset date when he "fell in a hole at [work]."  (Tr. 203).  At the time of the injury, plaintiff was

working as a bulk handler at a chemical factory, a position he had held since June of 1996.  (Tr.

99).  Plaintiff was 30 years of age when he filed his DIB application.  He has a high school

education, plus two years of college.  (Tr. 13).  In addition to his employment as a bulk handler,

plaintiff has worked as a general laborer, a machine operator, and a busboy.  (Tr. 13, 109-10).

The Social Security Administration (SSA) denied plaintiff's claim on September 24,

2003.  (Tr. 23-26).  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

(Tr. 27). The hearing was held on April 19, 2005 before ALJ Ethel Revels.  (Tr. 186-236).

On July 29, 2005, the ALJ issued a decision denying plaintiff's claim.  (Tr. 9-21).  The

ALJ determined that plaintiff suffered from a back disorder, hypertension, and obesity, and that

his impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he

did not have an impairment or combination of impairments that met or equaled any impairment

listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ further determined

that plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work

and, relying on the testimony of a vocational expert (VE), that there were a significant number of

sedentary jobs in the national economy that plaintiff was capable of performing.[1]  Accordingly,

the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

---

[1]"Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time
> and occasionally lifting or carrying articles like docket files,
> ledgers, and small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.  Jobs are
> sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.

Following the ALJ's denial of his application, plaintiff filed a request for review of the

ALJ's decision with the SSA's Appeals Council.  (Tr. 6-8).  The Appeals Council denied

plaintiff's request on September 20, 2005.  (Tr. 4-8).  The ALJ's decision thus became the final

decision of the Commissioner.

On November 4, 2005, plaintiff filed suit for review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the

parties' cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ

failed to give appropriate weight to the opinions of two of his treating physicians, that the ALJ's

RFC assessment is not supported by the record, and that the ALJ erred in concluding that

plaintiff's statements regarding the severity his condition were not fully credible.  The

Commissioner contends that the ALJ's decision is supported by substantial evidence and should

thus be affirmed.

**III.  Legal Standards**

**A.  Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,

> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed

in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment.  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings

are supported by substantial evidence and whether the ALJ applied the proper legal standards.

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270,

273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial

evidence is more than a mere scintilla of evidence but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in

the record that would have supported an opposite conclusion, so long as substantial evidence

supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.

### IV.  Analysis

### A.  Opinions of Treating Physicians

Plaintiff's first claim of error is that the ALJ failed to accord appropriate weight to the

opinions of Dr. Allan Morton and Dr. J. Alan Robertson under the "treating physician" rule.

Both Dr. Morton and Dr. Robertson opined, among other things, that plaintiff's impairments

rendered him incapable of working.  The ALJ determined that these opinions were entitled to

"some," but not controlling, weight.  (Tr. 17-18)

As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-

30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once."  Indeed, 20 C.F.R. § 404.1527(d)(2)

provides that a treating source's opinion regarding the nature and severity of a claimant's

condition is entitled to controlling weight if the opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence" in the record.  However, as suggested by the regulation, the ALJ is not

bound by a treating physician's opinion if that opinion is not supported by sufficient clinical

findings or is inconsistent with other substantial evidence in the record.  See also Warner v.

Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions

are only given [controlling or substantial] deference when supported by objective medical

evidence").

In a report dated May 4, 2005, Dr. Robertson set forth a detailed history of plaintiff's

back condition, stated the results of his own physical examination of plaintiff, discussed his

findings, and rendered the following diagnosis:

Primary:

1.  Trauma to Low Back (959.19) activating a dormant Grade I L5
Spindylolisthesis (756.12) secondary to Congenital Spondylosis (756.11) and
resulting in Right Lower Extremity L5 Sensory Radiculopathy (724.3).

2.  Occupation Injury Secondary to a fall into a hole (E883.9).

Secondary:

1.  Hypertension, Stage II with probable Left Ventricular Hypertrophy.

2.  Obesity, Body Mass Index 36, should be 24 (160 pounds).

3.  Gynecomastia, most likely secondary to Obesity.

(Tr. 182-83).  Dr. Robertson concluded with the following: "Having explored with Mr. Lloyd his

occupation history, and based upon his primary diagnosis, it is my opinion that Mr. Lloyd is

unable to work at any substantial gainful activity.  (Tr. 183).

Like Dr. Robertson, Dr. Morton opined that plaintiff was incapable of working.  In a

letter dated March 9, 2005, Dr. Morton stated the following:

> Mr. Lloyd has been seen by me since November 24, 2004, with the following
> impressions:
>
> 1.  History of chronic low back pain with chronic soft tissue strain with pain
>     and paresthesias of both legs, worse on the right suggesting disc disease
>     with x-ray evidence of grade I spondylolisthesis, and MRI suggesting
>     significant foraminal stenosis.
> 2.  Paresthesias of his hands, right more problem than the left, most consistent
>     with carpal tunnel syndrome.
>
> Physical findings demonstrate no significant weakness.  He does have a positive
> Tinel's sign bilaterally suggesting carpal tunnel syndrom.  In addition, his MRI is
> diagnostic for the above noted conditions.
>
> Based upon his history as well as objective findings and MRI, I do not believe he
> can be gainfully employed at this time.  This is based upon significant pain,
> paresthesias, difficulty doing repetitive stress activities to his upper extremities,
> and difficulty sitting or standing for prolonged periods of time.

(Tr. 176).

Plaintiff contends that these opinions are entitled controlling weight because both Dr.

Robertson and Dr. Morton were treating physicians within the meaning of 20 C.F.R. §§

404.1502, 404.1527 and there is no contradictory evidence in the medical record.  The court

disagrees.

The record reflects that Dr. Robertson examined plaintiff on only one occasion.  At the

hearing, plaintiff and his attorney conceded that Dr. Robertson had never treated plaintiff, that his

examination of plaintiff was in the nature of an independent medical examination (IME), and that

plaintiff was sent for the IME simply "to help the court."  (Tr. 200-01).  Clearly, Dr. Robertson is

not a treating source within the meaning of the regulations.  See Atterberry v. Secretary of Health

and Human Services, 871 F.2d 567, 572 (6th Cir. 1989)("Contrary to the claimant's suggestion, Dr. Zupaick is not a treating physician given the fact that he evaluated the claimant on only one occasion"); see also 20 C.F.R. § 404.1502 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability"). Accordingly, the ALJ was not bound by the "treating physician rule" in her assessment of Dr. Robertson's opinion and was not required to give controlling, or even substantial, weight to that opinion.

The issue of whether Dr. Morton may be considered a treating source presents a closer question. Dr. Morton first saw plaintiff on November 24, 2004. He saw plaintiff again on January 1, 2005 and March 9, 2005, for a total of three visits. It is doubtful that a doctor-patient relationship spanning only four months and consisting of only three visits is sufficient to create the type of relationship that would warrant application of the treating physician rule. As the regulations state,

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(d)(2)(i). Again, Dr. Morton saw plaintiff on only three occasions, the first of which came nearly three years after the alleged disability onset date. Given the brief nature of the doctor-patient relationship, Dr. Morton certainly did not obtain a "longitudinal picture" of plaintiff's impairment. Thus, it is difficult to accept plaintiff's assertion that Dr. Morton's

opinion is subject to the treating physician rule.  However, the court will not directly address that question.  Assuming that Dr. Morton may be regarded as a treating physician, the ALJ did not err in declining to give controlling weight to his opinion because that opinion is unsupported in certain respects and is inconsistent with other substantial evidence in the record.

In pressing this argument, plaintiff has ignored the evidence in the record regarding his treatment history with Dr. Reuben Henderson of the Concentra Medical Centers (CMC), Livonia, Michigan, and other CMC physicians.  Plaintiff saw Dr. Henderson or one of his colleagues on no less than 19 occasions, dating from December 6, 2001, the date on which plaintiff suffered his back injury, to June 7, 2002.  On that date, Dr. Eleanor Tingson, a CMC physician, examined plaintiff, noting that he was in no acute distress, that he had no palpable spasms or tenderness, that he was standing erect, that his gait was normal, and that he exhibited negative bi-lateral leg raising.  (Tr. 160).  Dr. Tingson placed plaintiff on restrictions of no lifting, pushing, or pulling of over 15 pounds.  Plaintiff's restrictions were later increased to no lifting, pushing, or pulling of more than 20 pounds.  (Tr. 154-56).  Plaintiff was diagnosed with spondylolysis, spondylistheses, and right L5 spinal nerve compromise, and was ultimately placed on permanent work restrictions of "no repetitive lifting over 30 pounds, no bending greater than three times per hour, no pushing or pulling over 30 pounds, no squatting or kneeling."  (Tr. 142).  Notably, at no time did any CMC physician indicate that plaintiff's back injury precluded all work activity.  Rather, they placed him on restrictions are consistent with the ability to perform not just the sedentary work the ALJ found plaintiff capable of performing, but more strenuous light to medium work.  See 20 C.F.R. § 404.1567.

In addition to the above, a State of Michigan, Disability Determination Services consulting physician prepared a Physical Residual Functional Capacity Assessment form in which he offered the opinion that plaintiff was capable of occasionally lifting up to 30 pounds and frequently lifting up to 25 pounds, that he was capable of standing and/or walking (with normal breaks) for roughly six hours out of a eight-hour day, that he was capable of sitting with normal breaks) for roughly six hours out of a eight-hour day, and that he had an unlimited ability to push and/or pull within the aforementioned weight restrictions. (Tr. 169). These restrictions, like those recommended by the CMC physicians, are consistent with the ability to perform light to medium work.

Further, on August 6, 2003, Dr. L. Patel conducted a consultative examination of plaintiff and noted, among other things, that his gait was normal, that he had no focal muscle atrophy in either the upper or lower extremities, that muscle tone and strength in the upper and lower extremities was within normal limits, and that there were no apparent abnormalities in the cervical, thoracic, or lumbar spine, with mildly restricted range of motion of the lumbar spine. (Tr. 163-64). Dr. Patel further noted that plaintiff was able to toe-walk, heel-walk, tandem walk, and sit and stand, but that he was unable to bend, stoop, carry, push or pull. (Tr. 163-64). Dr. Patel rendered an "impression" of lumbar myositis, with no evidence of radiculopathy. These findings stand in stark contrast to Dr. Morton's determination that plaintiff's back condition and carpal tunnel syndrome were so severe as to preclude all work activity.

The court further notes that Dr. Morton diagnosed plaintiff as having Grade I spondylolisthesis, which is the mildest form of the condition. That diagnosis does not square with his conclusion that plaintiff is incapable of engaging in any work activity. See, e.g., Lee v.

Sullivan, 945 F.2d 687, 694 (4th Cir. 1991)("The plaintiff did have spondylolisthesis but it was the mildest type of such ailment. Normally the ailment is not considered to be totally disabling below Grade IV"). In addition, there is no diagnostic testing or other objective medical evidence in the record to support Dr. Morton's determination that plaintiff suffered from bi-lateral carpal tunnel syndrome, which formed part of Dr. Morton's opinion that plaintiff was incapable of working. In fact, plaintiff himself testified that he did not have any problems using his hands or arms. (Tr. 226).

The evidence in the record undoubtedly establishes that plaintiff has a back impairment, as the ALJ found. Dr. Morton's conclusion in that regard is essentially uncontradicted. However, there is a substantial conflict in the record as to the severity and functional effects of plaintiff's impairments. While Dr. Morton concluded that those impairments precluded all work activity, the CMC physicians and the DDS consultant, as well as Dr. Patel, produced findings consistent with the ability to perform light to medium exertion work, with restrictions. Given this conflict in the record and the lack of evidence to support Dr. Morton's diagnosis of bi-lateral carpal tunnel syndrome, the court cannot say that the ALJ erred in failing to give controlling or significant weight to Dr. Morton's opinion.

### B. Residual Functional Capacity

Plaintiff further contends that the ALJ failed to render a "realistic" RFC assessment in that she failed to give appropriate weight to the opinions of Dr. Morton and Dr. Robertson and she failed to consider the following aspects of plaintiff's testimony: (1) that he required frequent adjustment from sitting to standing and was unable to walk or stand without pain (Tr. 217-18, 228), (2) that he sleeps only four to five hours per night and takes medication than affects his

concentration (Tr. 222, 229), and (3) that he needs to lie down frequently in order to achieve total

pain relief (Tr. 217).  Plaintiff also argues that as a result of the ALJ's failure to articulate a

"realistic" RFC assessment, the hypothetical the ALJ posed to the VE at the hearing was

inaccurate.  The court disagrees with these arguments.

As noted above, the ALJ was not required to give controlling or significant weight to

either Dr. Robertson's or Dr. Morton's opinion that plaintiff was unable to engage in substantial

gainful activity.  The ALJ did not otherwise ignore or disregard any restrictions or conditions

identified by either Dr. Robertson or Dr. Morton.  She simply disregarded their respective

opinions that plaintiff was incapable of working.  The court finds no merit to plaintiff's

contention that the ALJ did not give sufficient consideration to the opinions of Dr. Robertson and

Dr. Morton in assessing plaintiff's RFC.

As for the second prong of plaintiff's argument, contrary to plaintiff's assertions, it

appears that the ALJ did take into account his testimony regarding his professed concentration

deficits, his need to change position frequently, and his inability to walk or stand without pain.

While it is not reflected in her written findings, the ALJ included in the hypothetical she posed to

the VE at the administrative hearing a sit-stand option, restrictions of no standing for more than

ten minutes at a time and no walking of more than one block at a time.  (Tr. 230).  The ALJ also

stated that "[o]ur hypothetical Claimant...needs simple, routine, repetitive tasks because of

moderate limitations in [the] ability to maintain concentration for extended periods because – due

to pain."[2]  Thus, the ALJ gave at least partial credit to plaintiff's testimony regarding his

_____

[2]In response to this hypothetical, the VE testified that there were 1,100 visual surveillance
monitor positions, 1,100 inspector positions, and 4,200 information or reception clerk positions
at the sedentary level that the hypothetical claimant could perform.  The ALJ relied upon this

concentration difficulties, his need to switch between sitting and standing to alleviate pain, and

his inability to walk or stand without pain.  To the extent the ALJ did not give full credit to

plaintiff's testimony regarding these matters, or to his testimony that he needed to lie down

frequently to obtain total pain relief, she did not err in so doing, as is explained further below.

The ALJ's RFC determination, as incorporated in the hypothetical the ALJ posed to the

VE, is consistent with, and, in may respects, even more restrictive than, the findings of the CMC

physicians, the DDS consultant, and Dr. Patel.  Though these findings were in conflict with the

opinions of Dr. Robertson and Dr. Morton, the ALJ reasonably resolved the conflict.  Further, the

ALJ gave partial credit to plaintiff's testimony regarding his limitations.  Based upon this

evidence, and a review of the record as a whole, the court finds that the ALJ accurately portrayed

plaintiff's impairments and the extent of his limitations in the hypothetical.  Accordingly, the

ALJ's reliance on the VE's testimony in determining that plaintiff is not disabled was entirely

proper.  See Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.

1987)(testimony of VE in response to accurately formed hypothetical sufficient to support

finding that claimant is not disabled).  Plaintiff's second claim of error is therefore rejected.

### C.  Plaintiff's Credibility

At the hearing, plaintiff testified that he could not work because of the radiating pain he

experienced in his lower back.  (Tr. 204, 215).  Plaintiff stated that he experienced pain and

numbness on a daily basis as result of his back condition and that it limited his ability to sit,

stand, or walk, for prolonged periods.  (Tr. 216-19, 228).  He further testified that his daily

activities consisted primarily of lying down, which was, according to plaintiff, the only way he

---

testimony in concluding that plaintiff was not disabled.  (Tr. 230-32).

could get "total relief," watching television, and reading.  (Tr. 219-22).  Plaintiff was capable of

taking care of his personal needs, but he did not do any housework or otherwise engage in any

physical activities  (Tr. 223-27).

The ALJ found that plaintiff's statements were only partially credible, noting, among

other things, that the objective medical evidence in the record did not substantiate plaintiff's

allegations regarding the extent of his limitations, that his ability to drive a car was inconsistent

his claim of disability, that his treatment history and the medications he took did not reflect pain

of disabling severity, and that there were inconsistencies in the medical record regarding his level

of pain and the extent of his limitations.  (Tr. 16-17).  Plaintiff claims that the ALJ erred in

concluding that his statements were not fully credible and that if his statements were given full

credit, a finding that he is disabled would be warranted.

Having reviewed the record in its entirety, the court finds no basis therein to disturb the

ALJ's credibility determination, which is, of course, entitled to significant deference.  See

Walters, supra, 127 F.3d at 531 ("[A]n ALJ's findings based on the credibility of the applicant

are to be accorded great weight and deference, particularly since an ALJ is charged with the duty

of observing a witness's demeanor and credibility").  The ALJ carefully reviewed the record and

set forth numerous reasons for her determination that plaintiff's statements regarding the severity

of his condition and the extent of his limitations were not fully credible.  Aside of the ALJ's

dubious assertion that plaintiff's choice of reading material – science fiction and true crime

stories – was somehow inconsistent with the level of pain alleged, the court finds that the ALJ's

determination is well-supported by the record.  Given the state of the record, the ALJ's

-14-

discussion of the issue, and the deference due such a determination, it would be, in the court's view, an abuse of the court's reviewing authority to upset the ALJ's credibility determination.

### V.  Conclusion

For the reasons set forth above, the court finds that plaintiff's claims of error are lacking in merit and that the Commissioner's decision is supported by substantial evidence. Accordingly, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

-15-

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


                                                     s/Virginia M. Morgan
                                                 VIRGINIA M. MORGAN
Dated:   April 7, 2006                           UNITED STATES MAGISTRATE JUDGE


_____

## PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of
record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on
April 7, 2006.

                                                 s/Jennifer Hernandez
                                                 Case Manager to
                                                 Magistrate Judge Virginia M. Morgan